UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| Boardwell, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>Monexaba.vip, *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-00381<br><br>**Plaintiff's Motion for *Ex Parte* Temporary Restraining Order & Order Authorizing Expedited Discovery** |

Plaintiff Boardwell, LLC hereby requests that the Court enter (i) a temporary restraining order freezing the Defendants' assets and (ii) an order authorizing Plaintiff to engage in expedited discovery. In support, Plaintiff respectfully shows the Court as follows.

I.    **Preliminary Statement**

As the Court will be aware, this is a pig-butchering scam case. Plaintiff filed this action to recover assets lost to a cryptocurrency-related fraud and conversion scheme operated by a sophisticated criminal syndicate. The Defendants stole more than assets worth more than $633,000.00 from Victim—a devastating loss. As is typical in these cases, Boardwell does not know the Defendants' true identities or their precise whereabouts. But, with the assistance of a professional blockchain investigator, Boardwell traced

- 1 -

Victim's stolen assets to accounts controlled by the Defendants at two cryptocurrency exchanges. This tracing is fundamental to the relief Boardwell seeks in this Motion.

Boardwell's present aims are to preserve the status quo and serve the Defendants with process. Accordingly, Boardwell now seeks (i) an *ex parte* temporary restraining order freezing the Defendants' assets and (ii) authorization to issue subpoenas to various third parties seeking information about the Defendants and their activities.

## II. Supporting Materials

Boardwell submits the following materials in support of this Motion.

*Exhibit 1: Cole Declaration*. Evan Cole is Boardwell's investigator in this case. Mr. Cole's declaration attests to the locations to which the assets misappropriated from Victim were ultimately transferred. It also provides a blockchain tracing report and information about the pig-butchering scam epidemic and identifies the subpoena targets to whom Boardwell would direct its expedited discovery.

*Exhibit 2: Hoda Declaration*. Marshal Hoda is counsel to Boardwell in this matter. Counsel's declaration attests to the reasons why the Court should not require notice before issuance of an *ex parte* temporary restraining order.

### III. Factual Allegations

As detailed in Boardwell's Complaint,[1] the Defendants' scheme bears the unmistakable characteristics of a pig-butchering scam. Defendant Ron Wilson contacted the victim ("Victim") through a dating site and gained her trust by patiently building a personal connection.[2] He then advised her to make an account on the monexaba.vip platform, and "trained" her in the process of trading and investing in cryptocurrencies there.[3] Following Wilson's guidance, Victim began transferring cryptocurrency she had purchased to blockchain addresses provided to her by monexaba.vip—which she believed to be a legitimate trading platform.[4]

But when Victim attempted to withdraw her funds, monexaba.vip's representatives told her that because the amount of the withdrawal was significant, she needed to pay withdrawal fees to the platform, taxes, and a technology fee to process the withdrawal.[5] Victim soon realized she had been scammed.

---

[1] Dkt. No. 1, ("Complaint").

[2] *Id.*, ¶ 14.

[3] *Id.*, ¶¶ 15-16.

[4] *Id.*, ¶¶ 16-18.

[5] *Id.*, ¶ 18.

The cryptocurrencies Victim transferred to the Defendants were never 'invested' or used for any other legitimate purpose.[6] The Defendants simply stole Victim's assets. They are absconding with those assets by transferring them from address to address on the blockchain.[7]

### A. Blockchain Tracing Results

Plaintiff's investigator has traced the assets stolen from Victim through the blockchain.[8] As detailed in the Cole declaration, the assets the Defendants stole from Victim can be traced to accounts they control at the Binance and OKX cryptocurrency exchanges (the "Destination Exchanges"). The tracing methodology is set forth more fully in the Cole declaration and the attachments thereto. The Destination Exchanges and dollar-denominated value of assets traced to them are set forth below.

| *Destination Exchange* | *Amount Traced* |
|---|---|
| OKX | $446,071 |
| Binance | $149,527 |

---

[6] Ex. 1, Cole Declaration (henceforth "Cole Dec."), ¶¶ 3-5 (concluding that Victim was the victim of a pig-butchering scam and providing sources for comparison to facts of this case).

[7] *Id.*

[8] *Id.*, ¶¶ 6.

## IV. Relief Sought

Plaintiff seeks (i) a temporary restraining order freezing the Defendants' accounts at the Destination Exchanges and the assets within them and (ii) an order authorizing expedited discovery. The balance of this Motion will articulate the standards applicable to these requests and explain why Boardwell has satisfied them.

### A. The Court should issue an *ex parte* Temporary Restraining Order freezing the Defendants' accounts at the Destination Exchanges.

Plaintiff requests that the Court issue an *ex parte* temporary restraining order freezing the Defendants' accounts at the Destination Exchanges. The standard for issuance of such an order has both procedural and substantive aspects. This section will first explain why Plaintiff has satisfied these requirements. It will then detail the Court's authority to issue an asset-freezing order in this case, and why it should indeed do so.

#### *1. Plaintiff has met the procedural requirements for issuance of an ex parte restraining order.*

The Court has the authority to issue an *ex parte* temporary restraining order without notice or a hearing if (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts

made to give notice and the reasons why it should not be required."⁹ Each of these requirements is met here.

*Element 1: Immediate & Irreparable Injury*. The Complaint, the Cole Declaration, and the Hoda Declaration show the likelihood of immediate and irreparable injury or loss. These materials first establish that Victim was victimized by Defendants in a pig-butchering scam.¹⁰ The tactics on display here are a precise match for those that have been described in news reports, law-enforcement bulletins, and reported cases.¹¹ Any law-enforcement agent or investigator familiar with this area would conclude that Victim was the victim of a pig-butchering scam immediately upon reviewing the evidence, just as Boardwell's investigator has here.¹²

The risk of immediate and irreparable injury is posed by the fact that cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.¹³ And while crypto assets held at exchange-based addresses can be frozen and involuntarily disgorged, most assets held in "self-custody" or at non-compliant exchanges cannot.¹⁴ Thus, the tracing of Victim's assets to the

---

⁹ FED R. CIV. P. 65(b)(1)(A)-(B).

¹⁰ Complaint, *passim*.

¹¹ Cole Dec., ¶ 5.

¹² *Id.*, ¶ 3, 5.

¹³ *Id.*, ¶ 8.

¹⁴ *Id.*, ¶ 9.

Destination Exchanges provides a unique and fleeting opportunity to restrain further movement of those assets while Boardwell identifies and serves the Defendants. Courts have repeatedly recognized that these features of blockchain technology justify the issuance of *ex parte* freezing orders in crypto-fraud cases.[15]

*Element 2: Notice*. The Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action."[16] Under this logic, courts have found that notice of an asset-freeze

---

[15] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case and noting "[i]n light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the [Plaintiffs'] request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances"); *Cohn v. Popescu*, 1:24-cv-00337-MJT, Dkt. 8 (E.D. Tex.) (Truncale, J.) (Aug. 30, 2024) (same); *Ohlin v. Defendant 1*, No. 3:23-cv-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[16] *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified under this logic if applicant shows that

motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable, injury, or damages to [the] Court's ability to award effective final relief."[17]

If the Defendants were provided notice of this Motion, it would be "a simple matter" for them to "transfer [the stolen cryptocurrency] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this court."[18] Numerous courts, including this Court, have applied just this logic in granting *ex parte* asset-freezing orders in crypto-fraud cases like this one.[19]

---

"the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history").

[17] *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).

[18] *Jacobo*, 2022 WL 2052637, at *3 (quoting *Dluca*, 2018 WL 1830800, at *2).

[19] *See, e.g.*, *Harris*, Case No. 1:24-cv-00313-MJT, Dkt. 7, at p. 7 (issuing TRO without notice in pig-butchering case where "the thrust of the [Plaintiffs'] allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority … [and they] have provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion"); *Gaponyuk v. Alferov*, No. 2:23-cv-01317, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3

### 2. *Plaintiff has met the substantive requirements for issuance of a temporary restraining order.*

To obtain a temporary restraining order, the movant must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[20] Boardwell has met each of these requisites for the reasons set out below.

*Element 1: The Merits*. Boardwell alleges that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Boardwell is likely to succeed on the merits of each of these claims.

*RICO Claim*. To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that such injury was caused by the RICO violation.[21] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[22] who engaged in (2) a pattern[23] of racketeering

---

(notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

[20] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[21] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[22] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[23] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this

activity,[24] (3) connected to the acquisition, establishment, conduct or control of an enterprise.[25]

Boardwell's RICO claim is likely to succeed. The Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[26] (2) explaining their pattern of wire fraud,[27] and (3) recounting the injuries suffered as a direct result of the Defendants' racketeering scheme.[28] The Complaint shows that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a global scale.[29] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[30]

---

chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[24] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[25] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[26] Complaint.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant

*Conversion Claim*. To prevail on a conversion claim, a plaintiff must show a plaintiff must prove that: "(1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property."[31]

Boardwell's conversion claim is likely to succeed. The Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Victim's assets and have not returned them.[32] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in in crypto-fraud cases.[33]

---

and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[31] *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *11 (Tex. App.—Dallas Aug. 28, 2017, pet. denied).

[32] Complaint.

[33] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

*Fraud Claim.* To prevail on a fraud claim, a claimant must prove: (1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance.[34]

Boardwell's fraud claim is likely to succeed. The Complaint shows that that the Defendants intentionally and falsely represented that Victim was trading cryptocurrency on a legitimate platform with the intention of causing Victim to transfer her assets to the Defendants' control, that these statements were material to her, and that she acted on the Defendants' misrepresentations to her detriment.[35]

*Element 2: Irreparable Harm.* This irreparable-harm requirement is satisfied for the same reasons explained in Section IV(A)(1), above. As noted there, courts have repeatedly found a risk of irreparable harm in crypto-scam cases like this one.[36]

*Element 3: Balancing.* The threatened injury to Victim outweighs any damage a freezing order might cause to the Defendants. Victim has lost a life-changing sum, and the order she seeks is the only hope of preserving some assets for recovery. And while an asset freeze might cause temporary

---

[34] *Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 67 (Tex. App.—El Paso 2010, pet. denied).

[35] Complaint, ¶¶ 14-19.

[36] *See* n.17, *supra* (collecting cases).

inconvenience to the Defendants, any restraint implemented can be undone should future developments require.[37]

*Element 4: Public Interest*. A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Victim.[38] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[39] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[40]

---

[37] *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Gaponyuk*, 2023 WL 4670043, at *3 (same, finding "a short-term freeze is unlikely to present any great harms"); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

[38] *Licht*, 2023 WL 4504584, at *3.

[39] *Id.*

[40] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

> 3. *The Court has the authority to issue the asset-freezing injunction Plaintiff seeks.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff's claims have been brought to judgment.[41] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive trust over traceable stolen assets.[42] Plaintiff seeks just such relief here.[43] For that reason, the Court has the authority to issue the requested asset-freezing injunction.

> 4. *The Court should not require a bond.*

Rule 65(c) provides that a court issuing a preliminary injunction or TRO should do so "only if the movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[44] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at

---

[41] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

[42] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[43] Complaint, ¶ 34.

[44] Fed. R. Civ. P. 65(c).

all."[45] The Defendants will not suffer any damages as a result of the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Boardwell thus requests that the Court decline to impose a bond.

### B. The Court should authorize Plaintiff to issue subpoenas seeking information about information about the Defendants and their activities.

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)."[46] But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order."[47] Courts in this circuit apply a "good cause" standard to determine whether such an order should issue.[48] Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[49]

Many courts have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-related fraud cases like this one.[50] Indeed,

---

[45] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

[46] FED. R. CIV. P. 26(d)(1).

[47] *Id.*

[48] *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard).

[49] *Id.* at 239.

[50] *See, e.g., Strivelli v. Doe*, No. 22-cv-22060 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges in crypto case and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to

courts have affirmatively held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them.[51]

### 1. *Proposed Discovery*

Boardwell's proposed discovery arises from the pre-suit investigation performed by its investigator. This investigation revealed a series of third parties likely to be in possession of information about the Defendants. Each of those third parties and their connection to this case is set out below.

| *Subpoena Target* | *Connection to Case* |
|---|---|
| Cloudflare, Inc. | Cloudflare provided content-delivery-network services to monexaba.vip. |
| Gname | Gname is the domain registrar for monexaba.vip. They may have information about the individual accountholders. |
| OKX Group | A significant portion of the cryptocurrency assets stolen from Victim were ultimately deposited in accounts at the OKX cryptocurrency exchange. |
| Binance, Ltd. | A significant portion of the cryptocurrency assets stolen from Victim were ultimately deposited in accounts at the Binance cryptocurrency exchange. |

---

ascertain the identity of John Doe defendants"); *Licht*, 2023 WL 4504585, at *4 (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request").

[51] *Gaponyuk*, 2023 WL 4670043, at *4 (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

| WhatsApp, Inc. | WhatsApp is the messaging service that Wilson used to communicate with Victim. |
|---|---|
| Coinbase | Wilson provided Victim with a Coinbase deposit address. |

### 2. *Information Sought*

Plaintiff requests the Court's authorization to issue subpoenas to the above-listed entities and other entities likely to be in possession of information about the Defendants, seeking the following information concerning the Defendants' accounts.

- Biographical and contact information;

- IP address and device logs;

- Payments information,[52] and;

- Account balances and activity.

In pig-butchering cases like this one, the discovery process resembles peeling the layers of an onion. Internet service providers' subpoena responses frequently reveal information warranting additional subpoenas to other internet service providers. For example, a subpoena to Google concerning a Gmail address that the alleged scammers used to communicate with the plaintiff will reveal a Microsoft email address used as the "recovery email" for that account. For that reason, Boardwell seeks the Court's authorization to issue follow-on subpoenas seeking the same scope of information outlined

---

[52] As to payments information, the proposed subpoenas will seek only information sufficient to identify the payments provider and the salient account with that provider.


above to additional internet-service providers and cryptocurrency exchanges determined to be in possession of relevant information.[53]

## V. Conclusion

For the reasons set out above, Boardwell has met the standards for issuance of a temporary restraining order and an order authorizing expedited discovery in this matter. Boardwell requests that the Court issue this relief in the form of the proposed order submitted with this Motion.

---

[53] *See Licht*, 2023 WL 4504585, at *4 (authorizing expedited discovery on "any party" likely to have information about the defendants).

- 19 -

Dated: July 23, 2025                    Respectfully submitted,

                                        THE HODA LAW FIRM, PLLC


                                        _____
                                        Marshal J. Hoda, Esq.
                                        Tx. Bar No. 2411009
                                        Alexander J. Crous, Esq.
                                        Tx. Bar No. 24136488
                                        12333 Sowden Road, Suite B
                                        PMB 51811
                                        Houston, TX 77080
                                        o. (832) 848-0036
                                        marshal@thehodalawfirm.com

                                        *Attorneys for Plaintiff*